IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILEY BROWN & ASSOCIATES, LLC, | ) | Case No. 06-50886 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This matter came before the Court for hearing on August 8, 2006 upon the Application by the Debtor to Employ A. Carl Penney ("Penney") as Attorney for the Debtor in Possession (the "Application"), filed by the above-referenced debtor (the "Debtor") on July 17, 2006. At the hearing, A. Carl Penney ("Penney") and Tanya R. Wiley ("Wiley"), Chairwoman/CEO of the Debtor, were present on behalf of the Debtor, and Sarah D. Bruce was present on behalf of the United States Bankruptcy Administrator.

The Application seeks to employ Penney "to act . . . in advising and representing the debtor in possession in this case." Because the Court has determined that Penney represents an interest adverse to the Debtor's estate and does not have the necessary experience and proficiency to represent the Debtor in this case, the Application will be denied.

Based upon the evidence presented at the August 8, 2006 hearing, a review of the Application, and a review of the entire official file, the Court hereby makes the following findings of fact and conclusions of law.

### FACTS

On May 26, 2006, Cecil Dorrel Brown ("Brown"), an individual, filed a Chapter 13 petition, case number 06-50670 (the "Brown Case"). Penney represents Brown, who lists the

Debtor as his employer on schedule I. Brown filed his bankruptcy schedules on June 12, 2006. Brown's schedule B indicates that he owns "½ ownership Wiley Brown & Associates, LLC appraised for 1.5 million dollars, less debts of 773,200.00 = net value of 726,800.00/2 = $363,400.00 net interest in business (includes building)."

Brown's schedule D lists four secured debts, including a $94,000 obligation to the City of Winston-Salem secured by a deed of trust on two tracts of commercial real estate located at 545 N. Trade Street, Winston-Salem, North Carolina 27101, and 550 Liberty Street, Winston-Salem, North Carolina 27101 (the "Commercial Property"), with the notation "payments in deferrment (sic)." The Commercial Property has a listed value of $1,550,000.00. Brown also lists a $601,000.00 obligation to Mechanics & Farmers Bank secured by a deed of trust on the Commercial Property. Brown's schedule H indicates that his wife, Wiley, is a co-debtor on the indebtedness to Mechanics & Farmers Bank. The Debtor's schedule D indicates that the Debtor is also obligated on the indebtedness to the City of Winston-Salem and Mechanics & Farmers Bank.

Brown's schedule I indicates that he and his wife each derive $5,250.00 of income each month from the Debtor and that, in addition, he will receive a "company contribution to Chapter 13 payment" in the amount of $6,000.00 each month in order to fund his Chapter 13 plan.[1]

---

[1]Brown's Statement of Financial Affairs indicates that he and his wife earned the following gross income from the Debtor:

| Year | Name | Amount | Average |
|------|------|--------|---------|
| 2004 | Tanya Wiley | $64,500.00 | [average $5,375.00/month] |
| 2004 | Cecil Dorrel Brown | $42,808.00 | [average $3,567.33/month] |
| 2005 | Tanya Wiley | $56,000.00 | [average $4,666.66/month] |
| 2005 | Cecil Dorrel Brown | $56,000.00 | [average $4,666.66/month] |
| 2006 | Tanya Wiley | $26,250.00 | [average $5,250.00/month] |
| 2006 | Cecil Dorrel Brown | $26,250.00 | [average $5,250.00/month] |

On July 11, 2006, the Debtor, a limited liability company, filed a Chapter 11 petition with the assistance of Penney. Ten days later, on July 21, 2006, Brown amended schedule D in the Brown Case to reflect the following:

    a.    $94,000 owed to the City of Winston-Salem secured by a deed of trust on the Commercial Property), with the notation "payments in deferrment (sic) - but will be paid through corporate C-11 if necessary."

    b.    $601,000.00 owed to Mechanics & Farmers Bank secured by a deed of trust on the Commercial Property, with the notation "to be paid through Corporate C-11, Case No. 06-50886."

On July 17, 2006, the Application was filed by the Debtor, requesting authority to employ Penney to represent the Debtor in this Chapter 11 case. The affidavit of Penney attached to the Application states that

> he has no connection with said Debtor, the creditors, or any other party in interest, or their respective attorneys and that he represents no interest adverse to the said Debtor, or the estate in which the matters upon which (sic) he is to be engaged.

The affidavit does not mention, nor was it addressed at the hearing, that

    a.    Penney represents Brown, a 50% owner of the Debtor, in a pending Chapter 13 case;
    b.    Brown derives his income from the Debtor;
    c.    for no apparent reason, the Debtor is contributing an additional $6,000.00 each month to Brown's Chapter 13 case;
    d.    Brown and Wiley (the other 50% owner) are co-obligors, along with the Debtor, on the largest debt in both bankruptcies (i.e., the $601,000 owed to Mechanics & Farmers Bank );
    e.    Brown is a co-obligor with Debtor on the second largest debt in the Debtor's bankruptcy (i.e., the $94,000 owed to the City of Winston-Salem); and
    f.    Brown's schedules indicate that the Debtor, not Brown, will pay the indebtedness to Mechanics & Farmers Bank and to the City of Winston-Salem.

On July 25, 2006, just eight days later, schedules A through J were filed by the Debtor with Penney's assistance. The Debtor's schedules contained several errors. Among the more obvious errors was the inclusion of schedule C, indicating the Debtor's claim of exemptions. Of course, pursuant to Section 522(b), only individual debtors are entitled to claim exemptions. In addition, various portions of the Debtor's Statement of Financial Affairs were not completed correctly.

On July 28, 2006, Brown filed a proposed plan of reorganization in his Chapter 13 case. The plan proposes that monthly payments be made by the Debtor to Mechanics and Farmers Bank; it makes no mention of the indebtedness to the City of Winston-Salem.

At the August 8, 2006 hearing, Penney stated that in more than twenty years of practicing law he had represented a Chapter 11 debtor in only two previous cases, the most recent of which was seven or eight years ago. Noting that the Debtor listed thirty executory contracts, the majority of which appear to be unexpired leases of non-residential real property in which the Debtor is the landlord, Penney was asked if he was familiar with the applicable provisions of Section 365 of the Bankruptcy Code. Penney responded that he could not recall them "off the top of his head."

## ANALYSIS

There are two reasons why Penney will not be approved to represent the Debtor in this case. First, Penny represents Brown, a co-owner of the Debtor, whose interests are adverse to the Debtor's estate. Second, Penney has not convinced the Court that he has the ability to adequately represent the Debtor in this Chapter 11 case.

A.  Conflict of Interest

Penney's representation of Brown in the Brown Case constitutes a conflict with his representation of the Debtor in this case. Brown is an officer and employee of the Debtor. According to his schedules, Brown derives his income from the Debtor, and Brown's Chapter 13 plan depends on the Debtor giving Brown an extra $6,000.00 per month with which to make his plan payments. Brown is depending upon the Debtor, a co-obligor, to make the payments to the City of Winston-Salem and to Mechanics & Farmers Bank. Penney cannot represent Brown, an owner and employee of the Debtor and a co-obligor with the Debtor, and represent the Debtor, which is a creditor of Brown, at the same time.

Section 327 of the Bankruptcy Code governs the employment of professionals. Section 327(a) states as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 327(c) allows for the approval of professionals who also represent a creditor of the estate only if there is no "actual conflict of interest." 11 U.S.C. § 327(c).

In Harold & Williams Development Co. v U.S. Trustee, 977 F.2d 906, 908 (4th Cir. 1992), the Fourth Circuit addressed Section 327(a) in a case in which an attorney sought to be employed as both the attorney and the accountant for the debtor-in-possession. The bankruptcy court approved him as the attorney but not as the accountant, saying that there was a per se rule against such dual employment because of an "inherent potential for conflict between the two types of professionals." Id. The attorney appealed. The district court refused to adopt the per se rule

against dual representation but found that the bankruptcy court had not abused its discretion in denying the request.  See id. at 909.

After discussing Section 327(a), the Fourth Circuit stated that, although the Bankruptcy Code vests the trustee or debtor-in-possession with immediate power to select candidates for employment by the bankruptcy estate, it gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the estate, in part by empowering the court to approve any candidate who is selected.  See id. citing In re Martin, 817 F.2d 175, 182 (1st Cir. 1987)("historically, bankruptcy courts have been accorded wide discretion . . . in regard to the terms and conditions of the engagement of professionals.").  However, that discretion is carefully circumscribed.  There are congressionally established per se rules that a bankruptcy court must apply in exercising its approval power over the appointment of professionals.[2]  See id.  Because the absolute disqualifications that Congress established are carefully delineated and narrowly tailored, courts must take care not to fashion absolute prohibitions beyond those legislatively mandated without some measure of assurance that the purposes of the Bankruptcy Code will always be served thereby.  See id. at 910.  The Fourth Circuit stated, "it is our opinion that the court must not abdicate the equitable discretion granted to it by establishing rules of broad application which fail to take into account the facts of a particular case and the overall objectives of the bankruptcy system."  Id. citing Martin, supra at 182 and In re BH & P, Inc., 949 F.2d 1300, 1315 (3rd Cir. 1991)("Courts have generally declined to formulate bright-line rules concerning the criteria for disqualification but have favored instead an approach which gives the bankruptcy

---

[2]For example, Section 327(f) provides that a court cannot approve "a person that has served as an examiner in the case."

court discretion to evaluate each case on the facts, taking all circumstances into account.")

Once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under Section 327, the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding. See id. citing In re BH & P, Inc, supra at 1316. As discussed below, Penney's representation of Brown constitutes a representation of an interest that is adverse to the estate.

1. Penney Cannot Simultaneously Represent the Debtor and the Debtor's Owner

It is a conflict of interest to represent a debtor and an owner of the debtor. A case strikingly similar to the one at hand is In re Big Mac Marine, Inc., 326 B.R. 150 (8th Cir. B.A.P. 2005). In Big Mac Marine, the debtor corporation was a family business owned by the Schmidts, who were husband and wife and 100% shareholders. See id. at 151. A bank lent money to the debtor, which the Schmidts personally guaranteed. Nine months before the debtor filed its petition, the Schmidts filed their own Chapter 11 case, and attorney Needler was approved to represent them. See id. at 152. The debtor then filed a Chapter 11 proceeding, and Needler again moved the court to approve him as counsel for the debtor. See id. Needler filed a sworn declaration that he was disinterested and represented no interest adverse to the estate.

The United States Trustee and a creditor objected to the representation, alleging that it was a conflict of interest. See id. The court agreed and held that an attorney who represented the debtor's principals in their individual bankruptcy case, principals who were also creditors of the

7

debtor, was disqualified, based on an actual conflict of interest under Section 327(c), from representing the debtor. See id. at 153.

In this case, Brown is part-owner of the Debtor. Further, Brown and his wife personally guaranteed the largest debts of the Debtor. As such, it is a conflict of interest for Penney to represent the Debtor. See also In re Plaza Hotel Corp., 123 B.R. 466, 469 (9th Cir. B.A.P. 1990) (attorney precluded from representing debtor when he was already representing debtor's owners and guarantors in a state court proceeding; court found that dual representation would be a conflict of interest).

2. Penney Cannot Simultaneously Represent the Debtor and the Debtor's Creditor

Brown, Wiley, and the Debtor are co-obligors on the largest debt in both bankruptcies (i.e., the $601,000 owed to Mechanics & Farmers Bank). Brown is a co-obligor with the Debtor on the second largest debt in the Debtor's bankruptcy (i.e., the $94,000 owed to the City of Winston-Salem). Further, Brown's schedules indicate that the Debtor will pay the indebtedness to Mechanics & Farmers Bank and the City of Winston-Salem. Finally, the Debtor is contributing $6,000.00 per month to Brown's Chapter 13 plan.

When one co-obligor makes a payment on a debt, that co-obligor has a right of contribution against the other co-obligor for repayment. See Smith v. Richards, 40 S.E. 5, 8 (N.C. 1901)(originally contribution between co-obligors was held to rest upon a moral obligation only, but courts of law now consider it a joint obligation in the nature of a contract with each obligor responsible for his portion); see also Pully v. Pass, 31 S.E. 478, 479 (N.C. 1898)(payment of a bond by one of the two obligors gives him a right of contribution to the extent of the other's primary obligation; once one obligor paid off the original debt, that very payment at once vested

in him a right of action against the co-obligor).[3]

Each time that the Debtor makes a payment to Mechanics & Farmers Bank or to the City of Winston-Salem, the Debtor has a right of contribution against Brown for his share of the payment. Hence, the Debtor is a creditor of Brown. An attorney cannot simultaneously represent a debtor and a creditor of the debtor. See, e.g., In re Big Mac Marine, Inc., supra at 153 (attorney could not represent debtor and principals of debtor who were also creditors of debtor); In re McGregory, 340 B.R. 915, 920 (8th Cir. B.A.P. 2006)(conflict of interest arose where an attorney represented debtor and participated in debtor's refinancing transaction as both counsel for debtor and an agent of lender); In re Lehtinen, 322 B.R. 404, 408 (9th Cir. B.A.P. 2005)(it is a conflict of interest for an attorney to represent debtor in a chapter 13 case and to represent a broker in connection with the sale of debtor's home).

In In re Coal River Resources, Inc., 321 B.R. 184, 187 (W.D.Va. 2005), a law firm sought to represent four separate corporate debtors that were all owned by one individual. The same individual was also the chief executive officer of each entity. An objection was raised to the representation based on the fact that some or all of the debtors were creditors of one another. See id. at 186. The court found the situation involved an actual conflict of interest and stated, "the Court believes that it is bound to conclude that to represent . . . a debtor-in-possession which is a material debtor of another [debtor] is inherently to 'represent an interest adverse' to the latter's estate." Id. at 188.

---

[3]North Carolina law governs. See Butner v. United States, 440 U.S. 48, 54 (1979) (property and property interests are creatures of state law; "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.")

B.  Competence of Counsel

A second reason for the Court's denial of the application to employ Penney involves his failure to convince the Court that he possesses the requisite skills and competence required to represent the Debtor in this case.  Even if the employment of a particular professional is allowed under Section 327, the bankruptcy court still must decide whether to approve that professional considering the "protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.  See In re Coal River Resources, Inc., 321 B.R. 184, 187 (Bankr. W.D.Va. 2005).  The Fourth Circuit encourages "fact-intensive inquiry" and cautions against establishing new per se rules in conflict of interest cases.  Id. citing In re Palumbo Family Ltd. P'Ship, 182 B.R. 447, 449 (Bankr. E.D.Va. 1995).  The court should "take into account the facts of a particular case and the overall objectives of the bankruptcy system."  Id. at 188 citing Harold & Williams, 977 F.2d 906, 910 (4th Cir. 1992).

Several bankruptcy courts have faced similar issues regarding the employment of professionals.  On such case is In re Vettori, 217 B.R. 242, 246 (Bankr. N.D. Ill. 1998).  In Vettori, the debtor moved to employ attorney Kevin Brill ("Brill") and Patricia Rummer of the firm of Brill & Associates as attorneys for the debtor-in-possession.  See id. at 244.  Brill was the senior attorney in the firm.  The United States Trustee filed an objection based upon Brill's poor performance in two unrelated cases pending before another judge.  The Trustee contended that Brill lacked the proficiency necessary to represent the debtor.

The Vettori court stated that bankruptcy courts have broad discretion over the appointment of professionals.  Id. citing In re Seeburg Products Corp., 215 B.R. 175, 177-178

(Bankr. N.D. Ill. 1997). The ultimate determination as to whether an appointment of an attorney should be approved falls within the sound discretion of the court. Id., citing In re Glosser Bros., Inc., 102 B.R. 38, 39 (Bankr. W.D. Pa. 1989). Further, courts have the inherent authority to regulate attorneys who appear before it. "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Id. at 245 citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Specifically, federal courts have the power to "control admission to its bar and to discipline attorneys who appear before it." Id.

The Vettori court reasoned that in the administration of an estate, the interests of parties other than the party selecting the attorney are also directly at stake. In a Chapter 11 case, it is fundamental that a debtor in possession is obligated to act not in his own best interest, but rather in the best interest of the entire estate, including the creditors and owners of the debtor estate. Id. citing In re Doors and More Inc., 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991). An attorney attempting to represent a Chapter 11 debtor must have more than just integrity; such counsel must also have a strong knowledge of the technical requirements of the Bankruptcy Code.

> In a Chapter 11 case, an attorney can provide competent representation to the estate only if the attorney is thoroughly familiar with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Bankruptcy, and especially chapter 11 bankruptcy, is a highly specialized area of law. An attorney for a debtor in possession must have expert knowledge of bankruptcy law in order to achieve a successful result. Experience indicates that a business that files a chapter 11 case, by definition, is already in trouble. . . . Only an attorney with expert knowledge of bankruptcy law can properly aid in the administration of the case.
>
>> One of the most efficient methods for determining whether an attorney has competence to be appointed chapter 11 counsel is to look at the attorney's performance in previous cases. 'It is entirely proper to consider counsel's performance in previous cases in determining whether his appointment in this

11

>present case would be in the best interest of the estate and aid in the administration of the case.

Id., citing In re Doors, supra at 45-46, and In the Matter of Slack, 73 B.R. 382, 382 (appointment of attorney was denied where the attorney failed to appear at hearings and other appointments and where the attorney's behavior, including delinquent filings, caused harm to the estate).

The Vettori court stated that Brill had made several errors in prior cases. He failed to ensure compliance with the fiduciary obligations and other duties imposed upon a debtor-in-possession including failure to obtain approval for post-petition financing and the use of cash collateral, made inaccurate statements in schedules and pleadings, repeatedly disregarding scheduling orders which resulted in sanctions being entered against him and his client, and committed "unwarranted obstruction of discovery and failure to timely disclose information that should have been disclosed in discovery." Id. at 246. He had also shown himself careless in keeping schedules and failing to meet the scheduling deadline regarding his reply to the Trustee's objection to his appointment. For these reasons, the court approved Brill's appointment on the condition that he associate with another attorney to act as his co-counsel. Any duplication of work would result in the disallowance of duplicated fees. See id.

Another court discussed the employment of counsel in In re Vouzianas, 259 F.3d 103 (2nd Cir. 2001). The district court found that it was not clearly erroneous for the bankruptcy court to decide that it was not in the estate's best interest to allow the trustee to substitute counsel of his own choice for an attorney who had been representing the debtor for the past several years in prosecuting a personal injury action, at least absent any showing that the attorney was incompetent or disqualified. See id. at 108. The Second Circuit agreed but did not make the

decision lightly. "In general, we regard it as inimical to good administration to fasten an attorney on the trustee against his will," and "only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel." See id.; see also In re Christ's Church of the Golden Rule, 157 F.2d 910, 912 (9th Cir. 1946)(requiring the reasons that make it in the best interest of the estate to deny the applications appear in the record.). The Second Circuit noted that the trustee failed to support his request. Proposed counsel had invested time and money in the lawsuit and developed a sound working relationship with the debtor. See id. However, the Second Circuit upheld the bankruptcy court's denial of the trustee's request.

Penney has not demonstrated that he is competent to handle the representation of a Chapter 11 debtor. In the present case, there are several mistakes in the Debtor's bankruptcy schedules and statement of financial affairs. Some of the required information is missing. Penney admitted at the hearing that he had made mistakes in the schedules.

Another cause of concern is the executory contracts and unexpired leases listed in this case. The Debtor is a landlord to several commercial tenants. In fact, according to the Debtor's schedule G, the Debtor collects approximately $21,975 per month in rental income from such leases. These leases are of vital importance to the Debtor and to this case. When questioned about his understanding of the applicable provisions of Section 365 when the Debtor is the landlord in an unexpired lease, Penney did not know the provisions. The application of Section 365 to the Debtor's leases is a matter that should have been carefully considered and analyzed before the Debtor's case was filed.

Penney's abilities regarding Chapter 11 issues have not been demonstrated to the Court. Penney's representation of clients before the Court consists entirely of consumer bankruptcy

cases, of which the Court is quite familiar.  In such cases, Penney has not demonstrated an extensive knowledge of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Rules of this Court.

<u>CONCLUSION</u>

Given Penney's conflict of interest and lack of demonstrated ability in Chapter 11, the Court will not approve Penney to represent the Debtor.  Although the Court announced at the hearing on this matter that Penney's appointment might be approved if he associated with an experienced Chapter 11 attorney, the Court's further consideration of this matter, especially the issue of Penney's conflict of interest, has eliminated any such possibility.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) <br> ) <br> WILEY BROWN & ASSOCIATES, LLC, ) <br> ) <br> Debtor. ) <br> _____) | Case No. 06-50886 |

<u>PARTIES IN INTEREST</u>

A. Carl Penney, Esquire

Wiley Brown & Associates, LLC

Michael D. West, Esquire